# CHI REALTY CORPORATION

v.

# COLBY COLLEGE.

Supreme Judicial Court of Maine.

Argued Nov. 6, 1985.
Decided Aug. 15, 1986.

Preti, Flaherty & Beliveau, Daniel Rapaport (orally), Portland, for plaintiff.

Drummond, Woodsum, Plimpton & MacMahon, Hugh G.E. MacMahon (orally), Portland, for defendant.

Before NICHOLS, ROBERTS, WATHEN and SCOLNIK, JJ., and VIOLETTE, A.R.J.[*]

NICHOLS, Justice.

Out of a reexamination of educational policy at Colby College and the Trustees' 1984 decision to withdraw recognition from all fraternities on the campus there arose this cause, the Plaintiff, Chi Realty Corporation, now challenging the entry of summary judgment against it in Superior Court (Kennebec County). The Plaintiff there had brought this action against the Defendant College for allegedly breaching the agreement of July 1, 1951, between them that provided for the lease by the Plaintiff of a house for the use of an active chapter of Zeta Psi Fraternity. In May, 1984, just before this action was commenced, the Trustees had decided to prohibit all fraternities from holding meetings and initiating new members and had dispossessed all fraternities from the buildings they occupied on campus. At that point the active chapter of Zeta Psi Fraternity ceased to exist at Colby College and could no longer occupy this house on the campus.

We agree with the Superior Court that there was no genuine issue of a material fact, and we affirm that Court's entry of summary judgment for the Defendant College.

The Plaintiff corporation contends that the Trustees' action constitutes a breach of the Memorandum of Agreement executed in 1951 between Colby College and Chi Realty Corporation that *inter alia* provides for the lease by the Plaintiff of a house for the use of the active chapter of Zeta Psi Fraternity. Section III(E) of that agreement recites in pertinent part:

E. That in the event the ZETA PSI Fraternity ceases to have a chapter at Colby College, or in the event the Chapter is suspended or expelled for reason either by the College or the National Fraternity, the College shall recognize the property rights of the Corporation [CHI] by exercising one of the following options:[1]

The Plaintiff corporation asserts that the action of the Trustees does not fall within the "expelled for reason" provision that triggers the recognition of property rights. In its view, the term "for reason" must be construed to include only reasons amounting to a breach of the agreement. Specifically, the Plaintiff maintains that it could only be expelled if the active chapter of this fraternity failed to maintain academic and social standards required by the College as it is obligated to do under section III(B) of the agreement. Under its asserted construction of the agreement, the Plaintiff contends that at the very least, it is entitled to a trial on the issue of whether

---

[*] VIOLETTE, A.R.J., sat at oral argument as Associate Justice, but retired prior to the preparation of this opinion. He has joined in the opinion as an Active Retired Justice.

1. The resolution adopted by the Trustees on April 7, 1984, called for steps to be taken by the College to recognize the property rights of this corporation and other corporations owning fraternity houses on campus.

its local chapter has in fact failed to maintain the required standards.

We conclude that the Memorandum of Agreement will not bear the construction the Plaintiff corporation seeks to place on it. Under Section III(E), the recognition of the Plaintiff's property rights is to occur on the happening of any one of three contingencies. The first is that the fraternity "cease to have a chapter at Colby." This provision does not define how the cessation is to come about. The other two contingencies consist of expulsion "for reason" by either the College or the National Fraternity. In light of the apparent freedom of the fraternity to cease its Colby operations at will, the term "for reason" cannot be construed as requiring a breach of the agreement before Colby may expel the fraternity. In this context, "reason" should be construed in accord with its common meaning, that is, a rational justification, neither arbitrary nor frivolous.

Here the rational justification derives from the authority possessed by the President and Trustees of Colby College to determine educational goals and to change policies from time to time. The President and Trustees were granted "all powers necessary and proper to carry out [the purpose of promoting] education [and maintaining] an institution for the purpose of educating youth." P. & S.L., 1959, ch. 42. Pursuant to the bylaws of the College the President is empowered not only to have general charge of the administration but to prepare and recommend objectives, policies and long-range plans for the future development of the College.

The change in policy for the housing of students and the decision to more fully integrate the housing units into the academic program of the College was one way in which President and Trustees discharged their duty to evaluate the policies and to change them from time to time to achieve the educational goals of the college. To that end the President and Trustees had a rational justification to withdraw recognition of all fraternities. Thereupon, the Chapter was "expelled for reason" by the college. In other jurisdictions numerous courts have recognized the rights of governing boards to take the same or similar steps.[2]

With recognition of Zeta Psi thus withdrawn by the Trustees of the College, and with Paragraph III(c) of the memorandum of agreement between Plaintiff and Defendant dated July 1, 1951, providing *inter alia* that "in the event the ZETA PSI Fraternity ceases to have a chapter at Colby College" the College was authorized to proceed in the manner it did to recognize the property rights of the Plaintiff and terminate its agreement with the Plaintiff. Accordingly, the Superior Court entered summary judgment for the College.

In sum, as a consequence of the 1984 action by the President and Trustees there was no longer a chapter of any fraternity at Colby College. The College appropriately moved to wind up its relationship with the Plaintiff under the 1951 agreement.

Our entry will be:

Judgment affirmed.

ROBERTS and SCOLNIK, JJ., and VIOLETTE, A.R.J., concurring.

WATHEN, Justice, dissenting.

I respectfully dissent. In my view, this case does not turn on an analysis of the scope of the Trustees' authority over the educational policies of Colby College. Although, in the abstract the Trustees' have broad authority, the scope of their authori-

---

**2.** *See Waugh v. Board of Trustees of University of Mississippi*, 237 U.S. 589, 35 S.Ct. 720, 59 L.Ed. 1131 (1915); *Sigma Chi Fraternity v. Board of Regents of University of Colorado*, 258 F.Supp. 515 (D.Colo.1966); *Webb v. State University of New York*, 125 F.Supp. 910, 912 (N.D. N.Y.), *appeal dismissed*, 348 U.S. 867, 75 S.Ct. 113, 99 L.Ed. 683 (1954); *Pratt v. Wheaton College*, 40 Ill. 186 (1866); *State ex rel. Stallard v. White*, 82 Ind. 278, 285 (1882); *Beta Sigma Rho, Inc. v. Moore*, 46 Misc.2d 1030, 261 N.Y.S.2d 658 (1965), *affirmed*, 25 A.D.2d 719, 269 N.Y.S.2d 1012 (1966).

ty is irrelevant to the present contract dispute. The sole issue in this case is whether the Trustees violated their contract when they withdrew recognition from the Zeta Psi fraternity.

In the 1951 Memorandum of Agreement, Colby agreed to allow plaintiff to construct a housing unit on the campus of Colby College "for the occupancy of the active chapter of the Zeta Psi Fraternity." The College agreed that the building was to remain the property of plaintiff and that the fraternity would be entitled to sole occupancy of the building so long as the active chapter maintained the "social and academic standards required by the National Fraternity and required of all fraternities on the campus by said college." Finally, the agreement provided that Colby would recognize the property rights of plaintiff according to the terms of the agreement "in the event the Chapter is suspended or expelled for reason either by the College or the National Fraternity."

Under these provisions, whether the Trustees have breached the agreement depends on the construction to be given to the term "for reason." The College urges the Court to construe that term as requiring only a rational justification that is neither arbitrary nor frivolous. Reading the entire agreement, however, I conclude that the agreement will not bear such a construction.

In section III(C) of the agreement, the College agreed to allow the fraternity sole occupancy of plaintiff's building as long as the active chapter met the social and academic standards of both the College and the national fraternity. The plaintiff, in turn, pledged in section IV(B) that its chapter would maintain those standards. Under section III(E), the provision for recognition of plaintiff's property rights is triggered when the chapter is "expelled for reason" by the College or national fraternity. The symmetry between these provisions demonstrates that the reason contemplated by the term "expelled for reason ... by the College" is a breach by the chapter of its obligation, found in sections III(C) and IV(B), to maintain academic and social standards required by the College or the national fraternity.

Thus, for Colby to have expelled the fraternity without violating the 1951 agreement, the chapter must have failed to meet the social and academic standards required by the College. Whether the fraternity did in fact fail to meet those standards and, indeed, what those standards were are genuine issues of material fact that preclude resolution of this case by summary judgment. I would vacate the order of the Superior Court and remand the case for trial.